Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the

District of Massachusetts

_____ Division

| | |
|---|---|
| Frank P. Love | Case No. DA Docket Number: ARUSAR19MAY0175 |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | Jury Trial: *(check one)*  ☐ Yes  ☐ No |
| -v- | |
| Department of the Army<br>Honorable Christine E. Wormuth<br>Secretary of the Army | |
| *Defendant(s)* | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | Frank P. Love  Pro Se |
   | Street Address | 503 Main Street - PO Box 477 |
   | City and County | Rollinsford - Strafford County |
   | State and Zip Code | New Hampshire, 03869 |
   | Telephone Number | 978 902 0786 |
   | E-mail Address | fplove2003@gmail.com |

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Col. Efrem Z. Slaughter |
| Job or Title *(if known)* | (now) former Commander, Devens RFTA |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | efrem.z.slaughter.mil@army.mil |

Defendant No. 2

| | |
|---|---|
| Name | Steve Hood |
| Job or Title *(if known)* | (now) former Deputy to the Garrison Commander |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | steven.b.hood2.civ@army.mil |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Fort Devens |
| Street Address | 61 Quebec Street |
| City and County | Devens - Middlesex County |
| State and Zip Code | Massachusetts, 01434-0000 |
| Telephone Number | 978-796-3023 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
~Feb, March 2018, April 2018, Sept. Oct. 2018, April 2019

C. I believe that defendant(s) *(check one)*:
- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☑ age *(year of birth)*   1950   *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*
  Type II Diabetes Melitus

E. The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached pages

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
May 2019

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 11/22/2021 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Permanent Removal of SF50 from Fort Devens stating termination.
Re-issue of SF50 from Fort Devens stating resignation.
Permanent removal of any deragatory statements, disparaging remarks or documents from employee file citing termination from Fort Devens for unacceptable performance or falsification of document Government Form 306.
Lost wages from date of termination April 25, 2019 to March 2020, less unemployment received.

Asking for Damages-Maximum allowable amount from Dept. of the Army - $300k, result of employers actions resulted in loss of wages, health insurance for my family, loss of continuous service time. My character was

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 20 MARCH 2022

Signature of Plaintiff: *Frank P. Love* Pro Se
Printed Name of Plaintiff: FRANK P. LOVE

### B. For Attorneys

Date of signing: 

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

Statement of Facts (attachment to complaint)

1. Mr. Love sues his former employer for Reprisal, Age discrimination and Disability discrimination. Mr. Love was diagnosed with Type II diabetes in the fall of 2012. He does not require insulin, but to maintain a healthy lifestyle, he needs a healthy diet and access to healthy food choices and exercise.

2. Mr. Love is a Caucasian male, a US Veteran, with a Masters Degree in Public Service, Masters in counseling, and at the time of Employment at Fort Devens, a Doctoral Candidate with ABD (All but dissertation) in the field of Psychology. In addition, Mr. Love has 15 years of counseling within the Federal Government and with the Department of Public Health as Assistant Director of Nutrition Services for the State of Massachusetts. He held the position of SHARP Advocate for ~15 months before he was terminated on April 26, 2019 at the age of 68.

3. Mr. Loves immediate Supervisor at the time of position appointment was Stephen Hood, who reported to then Lt. Col. Slaughter, Commander at the Fort Devens installation at Fort Devens, Ayer, Massachusetts.

4. Mr. Love initially completed an on-line application on USAjobs.gov for the Victim Advocate position at Fort Devens, Ayer, Massachusetts on January 3, 2017 and identified a disability of Type II Diabetes. The position was reposted (an occurrence that happens for a number of reasons, typically to add/change/delete required qualifications). Mr. Love re-applied on March 3, 2017 and again identified a disability of Type II Diabetes.

5. Mr. Love's plans for retirement revolved around the time his son, Dalton, would graduate from High School (June of 2021). At the beginning of the year, (~March 5, 2017) and a few days after Mr. Love's second application submission for the Victim Advocates position at Fort Devens, he partially completed an application for retirement, signed, but did not date the application. Mr. Love's intention was for planning purposes to determine the amount of his annuity and/or to determine what retirement option he might have, if any. Mr. Love could then better determine his

length of employment with any potential employer, including that of the Victim Advocate position at Fort Devens, Massachusetts. Mr. Love was asked to date the application, but never dated the application. It should be noted that Mr. Love did not receive or hear anything from OPM until he was contacted in September of 2017 to answer a few questions from Louise Elliot, Legal Administrative Specialist, Retirement Services, Claim 1 group, US Office of Personnel Management.

6. Mr. Love was 'pre-selected' ~March 24, 2017 and had to meet some contingencies before a formal offer was presented to him. Mr. Love needed to undergo a routine background check and achieve a security clearance during pre-onboarding, and attend and successfully complete a 7-week Sexual Harassment/Assault Response and Prevention (SHARP) training at Ft. Levenworth-Kansas City, Missouri. Mr. Love would not receive his offer until December of 2017 after successfully undergoing a pre-employment background check and achieving a security clearance. During this time, Mr. Love periodically checked in with the HR representative Elizabeth Burrow, Human Resources Specialist, Civilian Personnel Advisory Center, through the summer and fall of 2017.

7. In July of 2017, Mr. Love completed OF 306 Form (Office of Personnel Management Declaration for Federal Employment) and answered 'No' to question #15 that asked if he was an 'Annuitant' or applied for retirement pay or pension. Mr. Love had no formal confirmation that he was an 'Annuitant', nor was he receiving a monthly deposit of an annuity.

8. In September of 2017, Mr. Love received an email from Louise Elliott, Legal Administrative Specialist, Retirement Services, Claim 1 group, US Office of Personnel Management, identifying herself as the person 'processing' his annuity amount retirement request and needed some additional information from Mr. Love, specifically his marriage certificate to his wife, Aline Jolin Love. Mr. Love obliged and asked a question to Ms. Elliott regarding retirement planning

and the benefits monetary-wise, of retiring now vs. waiting a few years. Ms. Elliot would never respond. Nor would she send any communication that she completed his request as a valid retirement instead of inquiry without a valid date on his application and without any notification of her action.

9. In December of 2017, Mr. Love received his formal offer and a start date of January 8, 2018. After reporting for duty on January 8, 2018, Mr. Love again completed OF 306 Form (Office of Personnel Management Declaration for Federal Employment) and answered 'No' to question #15 that asked if he was an 'Annuitant' or applied for retirement pay or pension. Mr. Love had no formal confirmation that he was an 'Annuitant', nor was he receiving a monthly deposit of an annuity as of this date as well. Mr. Love would learn that he would have to wait until July of 2018 to attend the (SHARP) training and until then, Mr. Love would be required to do a great deal of reading about the installation and about the position that he would soon be trained and Federally licensed.

10. In February of 2018 while looking over his pay statement, Mr. Love noticed he was in a different 'retirement system' and sent an inquiry to HR representative Elizabeth Burrow, Human Resources Specialist, Civilian Personnel Advisory Center. Mr. Love also questioned his accumulated service time in the request. He received a response that she no longer worked in that position and copied the new HR representative, Darlene Hemingway, Human Resources Specialist that would handle his inquiry. Darlene Hemingway emailed Mr. Love and told him she would get back to him. Darlene Hemingway resolved the service accumulation inquiry but never answered Mr. Love about the 'new retirement' system. Mr. Love continued to adapt to his new surroundings at Fort Devens as was allowable.

11. The New England weather in the beginning of the year will at times leave travel conditions treacherous. On a day when an announcement from the Community Commander went out for

early base closure until areas could be cleared, Mr. Love remained home until further notice. An early afternoon announcement indicated that the Base had been cleared of snow and safe to return to work. Mr. Loves commute to work was from New Hampshire and roads were not yet completely safe for travel so he notified the base that he would not make the trip into work for the remainder of the day for safety reasons and said he would make a leave request for the remainder of the day. When Mr. Love tried to claim Admin Leave for the Base closure hours, he was denied because he did not report to work for the remainder of the day. Mr. Hood asked Mr. Love to cite regulation where an employee is afforded Admin Leave for base closures if he does not return to work on the same day. Mr. Love produced the citation, but was denied the Administrative leave just the same and had to use personal leave for the base closure.

12. A specific task for identification and contact information included submitting information for Mr. Loves' business card. Mr. Love included the information following his name as: PsyD, ABD*, that means he has completed all course work in his Doctoral Studies of Psychology and is All-But-Dissertation to completion and to obtain his Doctoral Degree. This is a common notation that Doctoral Candidates often use to indicate their expertise in a field of study. Given the nature of Mr. Love's new position, the area expertise of Psychology would only enhance his abilities to help those victims of sexual abuse. Lt. Col. Slaughter denied the citation on Mr. Love's business card and ordered him not to use the citation.

13. In early April 2018, ~ week of April 9th, Mr. Love was notified that a seat cancellation in the April class of the (SHARP) training at Fort Levenworth, Kansas City, Missouri was available and asked if he wanted to attend. This notice came with ~a week to plan, leave and arrive at the training. Mr. Love agreed and began the process of booking the trip… flight/hotel etc. with the assistance of the travel representative of the Agency. Concurrently, Mr. Love sought the logistics of the training site from his Subject Matter Expert, Roxanne McElroy-White who had attended

the same training at the same installation that Mr. Love was to attend. Although Mr. Love was to stay at a hotel, where Ms. McElroy-White stayed on the installation, she advised that the installation and hotel did not lend itself to nearby restaurants and that he would definitely need a vehicle for his time during the training. Additionally, Ms. McElroy-White informed Mr. Love that although the installation provided public bus transportation, it did not run on weekends and that he was not always guaranteed a seat on the bus as uniformed personnel took preference.

14. With this knowledge and email in hand, Mr. Love approached his supervisor, Mr. Hood, and requested a rental car for the duration of his training because he had Type II diabetes and needed to have access to healthy food choices and not just what pizza, subs and a sandwich vending machine could offer. Mr. Hood forwarded the request to Lt. Col. Slaughter who did not approve the request and denied Mr. Love the benefit of a rental car. Mr. Love did not receive a rental car at the SHARP training.

15. Mr. Love attended the 7-week training, successfully completed and achieved a Federal DoD License in as a trained SHARP (Sexual Harassment/Assault Response and Prevention) advocate. He returned home late night 5/31/2018, where his wife immediately noticed a change in behavior and health. While Mr. Love returned to work immediately, his wife attempted to improve his health with healthy food choices and exercise. During Mr. Love's first week back to work (first week of June 2018) after the SHARP training, he received a curious letter telling him that his former wife was entitled to a portion of his 'annuity'. This took a back seat to Mr. Loves' health whereby at the end of July, his wife called his doctor about his decline in health since the SHARP training. Mr. Love attended the appointment and was directed to report to the Emergency Room at York Hospital, Maine. Mr. Loves A1C levels regarding his Type II diabetes has reached dangerous levels and he needed immediate emergency attention. Mr. Love endured a 3-day hospital stay and his health since then has been extremely difficult to manage.

16. Mr. Love continued his job tasks and in early October of 2018 was asked to perform a Sexual Assault Victim Mock Interview devised and initiated by Lt. Col Slaughter and not the SME, Roxanne McElroy-White. This was not the 'normal' process of conducting these 'Mock Interviews' as was noted by Roxanne McElroy-White' in the after-action report.

17. Just before this Mock Interview, Mr. Love became aware of a performance review about him but he was unable to access or provide comments to the review. Mr. Love never signed this PR as it was foreign to him and he had not participated in any form or manner of this review. It is important to note that Mr. Love never received a performance review, participated in a performance review or any performance related activity with Mr. Hood or Lt. Col. Slaughter during his entire time as Victim Advocate at Fort Devens, Ayer, Massachusetts.

18. Shortly after the Mock Interview, Lt. Col. Slaughter advised Roxanne McElroy-White not to assign any sexual assault cases to Mr. Love, by the Lt. Colonel's own admission in his deposition. Mr. Love knew nothing of this action by Lt. Col. Slaughter.

19. In December of 2018, Mr. Love received a call from the 'fraud' department. He was TOLD that he fraudulently signed the SF306 claiming he was not an annuitant when OPM declared he was. Mr. Love was not afforded the opportunity of an investigation or the opportunity to defend himself, but rather had to wait on Mr. Gregory Buchanan, Army Benefits Center-Civilian, OPM representative and other participants, to decide what they were going to do. Mr. Love had no voice in the decision making for the steps to correct whatever actions had taken place without his knowledge. In ~late February 2019, 'they' resolved the situation, with no input from Mr. Love to make him a 're-employed Annuitant'. Mr. Love did not know at the time that a 're-employed Annuitant' serves at the pleasure of the Commanding officer, in this case, Lt. Col. Slaughter, and can be terminated at his pleasing.

20. Mr. Hood departed his position in December 2018 and Lt. Col. Slaughter became Mr. Loves direct supervisor.

21. In early 2019, Mr. Love learned that Lt. Col. Slaughter wanted to 'get rid of him' via Susanne Blakeman, Legal Aid to Ft. Devens Legal Office. Ms. Blakeman overheard a comment in a public hallway, made by Lt. Col. Slaughter to Ft. Devens attorney, Jillian Thelen, to 'get rid of him, I don't care how you do it, just get rid of him'. A period of uncertainty about Mr. Loves' job plagued him until his termination in April of 2019. He did not have any counseling or meetings of any kind with Lt. Col. Slaughter, just a letter of dismissal and a notice to leave the installation in 15 minutes time. Mr. Love requested an additional day to clear his office and return installation assets. Lt. Col. Slaughter was not present on Mr. Love's last day.